```
_____ FILED            _____ RECEIVED
_____ ENTERED                _____ SERVED ON
             COUNSEL/PARTIES OF RECORD

             MAY 1 1 2012

        CLERK US DISTRICT COURT
           DISTRICT OF NEVADA
BY: _____
                              DEPUTY
```

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CHENTILE GOODMAN,                    )
                                     )
        Plaintiff,                )
                                     )
    v.                           )        2:11-cv-1447-RCJ-CWH
                                     )
                                     )             **ORDER**
LAS VEGAS METROPOLITAN POLICE        )
DEPARTMENT, a political subdivision of the )
State of Nevada; COSMOPOLITAN        )
INTERNATIONAL COMPANY, INC., a       )
Nevada Corporation; NEVADA PROPERTY  )
1, LLC, a foreign Limited Liability Company; )
DOES 1-30; ROES 1-30; jointly and    )
severally,                           )
                                     )
        Defendants.               )
                                     )
_____)

      This case arose from the detention of Plaintiff under the incorrect suspicion that she was a prostitute.  Defendant Nevada Property 1 LLC d/b/a The Cosmopolitan of Las Vegas ("Cosmopolitan") has filed a motion to dismiss the complaint for failure to state a claim (#11). For the following reasons, Cosmopolitan's motion to dismiss is granted.

**BACKGROUND**

I.    **Facts[1]**

      At 10:20 pm on or about February 9, 2011, Plaintiff Chentile Goodman picked up her friend, Ayda Maseser, from the Las Vegas airport.  (FAC (#16-1) at 4).  After getting dressed in the hotel room they rented at the Aria, Plaintiff and Maseser went to meet Plaintiff's

---

    [1] The facts are taken from Plaintiff's proposed first amended complaint ("FAC"), which was attached to her opposition to Cosmopolitan's motion to dismiss. (FAC (#16-1)).

1    boyfriend and his business partner at "The Henry", a venue within the Cosmopolitan, for a late

2    dinner and drinks. (*Id.*).

3         While proceeding towards The Henry, Plaintiff and Maseser were approached by an

4    undercover Las Vegas metropolitan police officer known by Cosmopolitan employees as

5    "Porkchop". (*Id.* at 3-4).  Porkchop began to make overtures "in the nature of a common

6    masher on the make," stating he was looking for a good time and asking Plaintiff if she knew

7    where he might meet some interesting people for some 'fun.' (*Id.* at 5). Plaintiff did her best

8    to ignore and discourage Porkchop and made it clear that she and Maseser were about other

9    business and that Porkchop should leave them alone. (*Id.*). Porkchop continued to make

10   overtures toward the women despite their attempts to rebuff him. (*Id.*).  Porkchop was

11   allegedly insulted by the fact the two attractive women showed no interest in him. (*Id.*). He

12   then called a second officer ("Officer 2") to join him and they identified themselves as police

13   and demanded identification of Plaintiff and Maseser. (*Id.* at 5-6). Plaintiff and Maseser

14   complied and explained they were on their way to have dinner at The Henry with some friends.

15   (*Id.* at 6).  Porkchop and Officer 2 (collectively "the Officers") then ran a "scope" on Plaintiff

16   and Maseser to learn of their criminal history, which revealed no criminal history on the part

17   of Plaintiff and a single past arrest for Maseser for which she was never prosecuted. (*Id.*).

18        The Officers then forcibly removed Plaintiff's cell phone from her hand, grabbed her by

19   the arm, and escorted her against her will to Cosmopolitan's security office. (*Id.* at 7, 10).

20   Plaintiff and Maseser were then detained in the security office by Cosmopolitan employees

21   at the request of the Officers while the Officers left to find other persons to be held in the

22   security office of the Cosmopolitan. (*Id.* at 8).  A number of other persons, some of which

23   were apparently prostitutes, were also being detained in the security office with the full

24   cooperation of Cosmopolitan. (*Id.*). While the Officers were not present, Plaintiff requested

25   to leave but was refused by Cosmopolitan security personnel. (*Id.*).  Plaintiff repeatedly

26   informed Cosmopolitan personnel that she was not a prostitute and Cosmopolitan personnel

27   allegedly agreed with her and recognized that she was not a prostitute, but continued to hold

28   Plaintiff on behalf of the Officers. (*Id.* at 9-10).  Plaintiff was told she had been arrested for

1 various crimes surrounding allegations of prostitution and that the detention was undertaken

2 at the request of the Officers so that the numerous detained suspects could all be taken to the

3 police department in a "paddy-wagon" rather than in individual transports. (*Id.* at 9).

4      After nearly two hours of being detained, Plaintiff was released and no charges were

5 brought against her. (*Id.*). Upon release, however, Cosmopolitan employees took Plaintiff's

6 photograph and included it in a trespass record where Plaintiff was listed as an undesirable.

7 (*Id.* at 11). Cosmopolitan employees then trespassed Plaintiff from the premises. (*Id.* at 21).

8 **II.    The Complaint**

9      Plaintiff filed her complaint in Nevada state court on August 22, 2011 against the Las

10 Vegas Metropolitan Police Department, Cosmopolitan International Company, Inc., Nevada

11 Property 1, LLC, and several Doe and Roe defendants whose names were to be inserted later

12 (including the names of the Officers). (Compl. (#1) at 7). The case was removed to federal

13 court on September 8, 2011. (Pet. for Removal (#1) at 1). Plaintiff's proposed FAC was later

14 submitted on October 14, 2011, which alleges: (1) false imprisonment; (2) battery; (3)

15 depravation of rights granted under the Fourth and Fourteenth Amendments to the United

16 States Constitution in violation of 42 U.S.C. § 1983; (4) defamation; and (5) intentional

17 infliction of emotional distress.[2] (FAC (#16-1) at 15-23).

18      On September 27, 2011, Cosmopolitan filed a motion to dismiss Plaintiff's claims

19 against it pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss (#11)). Plaintiff filed a

20 response on October 14, 2011 to which she attached the FAC. (Opp'n to Mot. to Dismiss

21 (#16); FAC (#16-1)). Cosmopolitan filed a reply on October 14, 2011 and Plaintiff filed a

22 surreply on December 13, 2011 after obtaining this Court's permission.[3] (Reply (#17); Surreply

23

24      [2] The FAC is substantially similar to the original complaint and merely expounds on

25 earlier allegations and adds additional facts.

26      [3] Plaintiff was given leave to file a surreply on December 12, 2011 by minute order to

27 allow Plaintiff to address arguments raised by Cosmopolitan for the first time in its reply brief.

28 (Minute Order (#24)).

3

1  (#18-1)).

2  **LEGAL STANDARD**

3       The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test

4  the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

5  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled

6  to offer evidence to support the claims."  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th

7  Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

8       To avoid a Rule 12(b)(6) dismissal, a complaint must plead "enough facts to state a

9  claim to relief that is plausible on its face."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017,

10  1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim

11  is plausible on its face "when the plaintiff pleads factual content that allows the court to draw

12  the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

13  *Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  Although detailed factual allegations are

14  not required, the factual allegations "must be enough to raise a right to relief above the

15  speculative level."  *Twombly*, 550 U.S. at 555.  All well-pleaded factual allegations will be

16  accepted as true and all reasonable inferences that may be drawn from the allegations must

17  be construed in the light most favorable to the nonmoving party.  *Broam v. Bogan*, 320 F.3d

18  1023, 1028 (9th Cir. 2003).

19       If the court grants a motion to dismiss a complaint, it must then decide whether to grant

20  leave to amend.  The court should freely give leave to amend when there is no "undue delay,

21  bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing

22  party by virtue of allowance of the amendment, [or] futility of amendment."  *Foman v. Davis*,

23  371 U.S. 178, 182 (1962); *see also* FED. R. CIV. P. 15(a).  Generally, leave to amend is only

24  denied when it is clear that the deficiencies of the complaint cannot be cured by amendment.

25  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

26  **DISCUSSION**

27       Cosmopolitan has moved to dismiss all claims in the complaint against it.  (Mot. to

28  Dismiss (#11)).  Of the five causes of action listed in the complaint, only four appear to be

4

directed against Cosmopolitan, including the section 1983 claim for constitutional right violations (count three), false imprisonment (count one), defamation (count four), and intentional infliction of emotional distress (count five).  The claim of battery seems to be exclusively directed against the Las Vegas Metropolitan Police Department.  Each claim against Cosmopolitan will be discussed in turn.

I.      **42 U.S.C. § 1983 Violations**

Cosmopolitan first argues that Plaintiff has failed to state a claim under 42 U.S.C. § 1983 because Cosmopolitan is not a state actor and because its acts were privileged.  (Mot. to Dismiss (#11) at 4-7).  "To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right."  *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (quoting *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989)), *vacated on other grounds*, - - - U.S. - - - -, 129 S.Ct. 2431, 174 L.Ed.2d 226 (2009).

A.      **Cosmopolitan Acted Under Color of State Law**

A defendant acts under color of state law if he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *West v. Atkins*, 487 U.S. 42, 49 (1988) (quotation omitted).  "Action under color of state law normally consists of action taken by a public agency or officer."  *Taylor v. First Wyo. Bank, N.A.*, 707 F.2d 388, 389 (9th Cir. 1983).  However, under certain circumstances private individuals may be liable as governmental actors.  *See Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003); *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1340 (9th Cir. 1997).  Conduct by a private individual may be considered state action, and consequently an act under color of state law, when (1) the claimed deprivation "resulted from the exercise of a right or privilege having its source in state authority," and (2) under the facts of the particular case, the private party appropriately may be characterized as a state actor.  *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982)).

5

The Supreme Court has identified four tests for determining whether the conduct of a private party constitutes state action, including: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997); *see also Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). Because Cosmopolitan held Plaintiff at the request of the Officers, the state compulsion test is most applicable to this matter.

"State action may be found under the state compulsion test where the state has 'exercised coercive power or has provided such significant encouragement, either overt or covert, that the private actor's choice must in law be deemed to be that of the State.'" *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)); *see also Kirtley v. Rainey*, 326 F.3d 1088, 1094 (9th Cir. 2003). Here, the Officers brought Plaintiff to Cosmopolitan and requested that she be held in the security office. The FAC further alleges that the security chief of Cosmopolitan was instructed by the Las Vegas Metropolitan Police Department at a meeting of security chiefs of local casinos with the Police Department that Cosmopolitan security personnel were expected to render unquestioned cooperation to police officers and to obey their requests. (FAC (#16-1) at 13). The request that Cosmopolitan detain Plaintiff along with the stated expectation of the Las Vegas Metropolitan Police Department that unquestioned cooperation be provided by Cosmopolitan qualifies as an exercise of coercive power and "significant encouragement" by the state, and accordingly Cosmopolitan's conduct qualifies as state action.

**B.    Cosmopolitan Violated Plaintiff's Constitutional Rights**

Plaintiff has also properly alleged she was deprived of her constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution by Cosmopolitan. The Fourth Amendment protects individuals from unlawful arrest or seizure without probable cause. U.S. CONST. amend. IV. This Amendment also applies to the states through the Fourteenth Amendment. U.S. CONST. amend. XIV, § 1. "It is well established that 'an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983.'" *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (quoting *Borunda*

6

*v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988)).  However, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  "Probable cause exists where 'the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).  Officers may also conduct an investigatory stop without violating the Fourth Amendment "if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Palos-Marquez*, 591 F.3d 1272, 1274 (9th Cir. 2010) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

Plaintiff alleges that her Fourth Amendment rights were violated because the Officers encouraged Cosmopolitan to detain her without probable cause and without reasonable suspicion supported by articulable facts that criminal activity was afoot. (FAC (#16-1) at 7, 19). Plaintiff alleges that at no time did the women invite or allude to a desire to interact with Porkchop and gave him no basis for concluding that the women were prostitutes. (*Id.* at 5). When confronted by Porkchop, the women instructed him to leave them alone and eventually ignored him altogether. (*Id.*).  Furthermore, although the manner in which the women were dressed could be deemed "sexy," their dress was in no way inordinate for a young woman out for an evening in Las Vegas. (*Id.* at 7).  Because Plaintiff alleges that she was detained without probable cause or a reasonable suspicion supported by articulable facts that she was engaging in criminal activity, she has stated a violation of her Fourth and Fourteenth Amendment rights.

## C.   Cosmopolitan's Conduct Is Not Privileged

Cosmopolitan asserts it cannot be held liable because its actions were privileged under numerous Nevada state statutes, such as NRS § 171.132 (stating a person making an arrest may summon as many people as necessary to aid in the arrest), NRS § 197.190 (making it

7

a misdemeanor to "willfully hinder, delay or obstruct any public officer in the discharge of official powers or duties"), and Nevada Gaming Regulation 5.011(1) (requiring gaming licensees to "exercise discretion and sound judgment to prevent incidents which might reflect on the repute of the State of Nevada and act as a detriment to the development of the industry"). However, the Supreme Court has held that "[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law." *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) (citation omitted); *see also Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 851 (9th Cir. 2004). The reason for this is that allowing state law to immunize actions that violate constitutional rights would violate the supremacy clause of the U.S. Constitution. *See Haywood v. Drown*, 129 S.Ct. 2108, 2115 (2009). Cosmopolitan consequently cannot claim its actions, which allegedly violated Plaintiff's rights under the U.S. Constitution, were immunized by state statutes and regulations.

### D.   Cosmopolitan Is Entitled to the Good-Faith Defense

The Court however finds that Cosmopolitan is entitled to rely on the good-faith defense because it was merely complying with government agents' request and was attempting to comply with the law in good faith. Although the Supreme Court previously held that private defendants are not entitled to qualified immunity under section 1983, the Supreme Court left open the possibility "that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith and/or probable cause." *Richardson v. McKnight*, 521 U.S. 399, 413 (1997) (quoting *Wyatt v. Cole*, 504 U.S. 158, 169 (1992)). In 2008, the Ninth Circuit held that private parties may assert a good-faith defense to section 1983 claims in *Clement v. City of Glendale*. 518 F.3d 1090, 1097 (9th Cir. 2008). In *Clement*, the Ninth Circuit held that a towing service who did its best to follow the law and had no reason to suspect that there would be a constitutional challenge to its actions was entitled to a good-faith defense to the plaintiff's section 1983 claim. *Id.* The towing service had been authorized by the police department and had conducted the tow under police supervision such that it appeared to be permissible under state and local law. *Id.* Because the towing service was acting on instructions from the police department in good faith, the Ninth Circuit concluded that

8

the towing service was entitled to a good-faith defense. *Id.*

In the present matter, Cosmopolitan was simply complying in good faith to the request of the Officers to detain Plaintiff because she was allegedly a prostitute. Cosmopolitan had no reason to question the Officers' assertion that she was a prostitute, as Cosmopolitan personnel played no part in the arrest and because implicit in the Officers' request was that the Officers had probable cause to detain Plaintiff on charges of prostitution. Therefore, as in *Clement*, Cosmopolitan was acting at the instruction of the police, the arrest appeared to be authorized by the police, and the detention appeared to be permissible under state law. Furthermore, as Plaintiff notes in the FAC, Cosmopolitan security personnel were "schooled in the importance and expectation of unquestioned cooperation with requests of police officers." (FAC (#16-1) at 13). Therefore even if Cosmopolitan personnel later had doubts as to whether probable cause existed, they were under instructions to unquestionably obey the police officers. Cosmopolitan was also placed in a difficult situation because even if its personnel did have doubts as to whether Plaintiff was a prostitute, they were not present at the time of the arrest and thus had no knowledge of whether the Officers had probable cause to make the arrest. If Cosmopolitan opted to release Plaintiff on the uninformed belief she was not a prostitute, Cosmopolitan could be liable for interfering with a police officer's apprehension, detention, and arrest if its belief that Plaintiff was not a prostitute proved to be incorrect. *See* NEV. REV. STAT. § 197.190 (making it a misdemeanor to "willfully hinder, delay or obstruct any public officer in the discharge of official powers or duties"). Because Cosmopolitan only detained Plaintiff at the request of the Officers and had no reason to doubt that the Officers had authority to make the arrest, Cosmopolitan is entitled to the same good-faith defense as was applied in *Clement*. *See* 518 F.3d at 1097.

## II.   False Imprisonment

"To establish false imprisonment of which false arrest is an integral part, it is necessary to prove that the person be restrained of his liberty under the probable imminence of force without any legal cause or justification." *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981) (quoting *Marschall v. City of Carson*, 464 P.2d 494 (Nev. 1970)). A defendant may be

liable for false imprisonment where: (1) he intentionally confines the plaintiff within boundaries fixed by the defendant; (2) his act directly or indirectly results in a confinement of the plaintiff; and (3) the plaintiff is conscious of the confinement or is harmed by it. *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 35 (1965)).

Plaintiff here alleges that Cosmopolitan security staff intentionally held her within the security office which directly resulted in her confinement for nearly two hours. (FAC (#16-1) at 7-8). Plaintiff was conscious of the confinement, as she had requested to leave and this request was refused by Cosmopolitan security personnel. (*Id.*). Plaintiff also alleges that no legal cause or justification existed for the detention because she had done nothing that would provide any level or suspicion of criminal activity. (*Id.* at 6). Finally, Plaintiff asserts that the Officers could articulate no basis for holding her and that the detention was without legal authority. (*Id.* at 10). These allegations properly state a claim for false imprisonment under Nevada law.

However, Cosmopolitan again is entitled to a good-faith defense. In *Grosjean v. Imperial Palace, Inc.*, the Nevada Supreme Court adopted the same good-faith defense that was applied by the Ninth Circuit in *Clement*. 212 P.3d 1068, 1077 (Nev. 2009) ("The good-faith defense may apply to private parties who become liable solely because of their compliance with government agents' request or in attempting to comply with the law."). Because the good-faith defense applies under Nevada law and because Cosmopolitan was only complying with the Officers' request to detain Plaintiff in good faith, Cosmopolitan is entitled to rely on this defense and Plaintiff has consequently failed to state a claim for false imprisonment.

## III.    Defamation

Plaintiff has also alleged that Cosmopolitan defamed Plaintiff by taking her into custody, stating that she had been arrested for crimes surrounding allegations of prostitution, and by subsequently trespassing her from the premises. (FAC (#16-1) at 9, 20). To establish a claim of defamation, a plaintiff must demonstrate "(1) a false and defamatory statement by a defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault,

amounting to at least negligence; and (4) actual or presumed damages." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002) (quoting *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993)).  Certain types of statements are considered so likely to cause serious injury and pecuniary loss that they are actionable without proof of damages.  *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005).  These statements include, among others, those that impute that the plaintiff has committed a crime and those that impute unchastity in a woman. *Branda v. Sanford*, 637 P.2d 1223, 1225 (Nev. 1981).

Cosmopolitan however is not liable for defamation for their statement that Plaintiff had been arrested for various crimes largely surrounding allegations of prostitution because this statement was not untrue.  Plaintiff was in fact arrested for alleged prostitution.  Although Plaintiff contends the allegations of prostitution were simply a cover and she was actually being arrested for rebuffing Porkchop's advances, Cosmopolitan had no reason to know the allegations were false, as none of Cosmopolitan's personnel were present at the time of arrest and its personnel was told by the Officers that she was being arrested for prostitution. Because Cosmopolitan was not negligent in its belief Plaintiff was in fact being arrested for prostitution, the fault element of defamation is not satisfied.  Accordingly, Plaintiff has failed to state a claim of defamation based on Cosmopolitan's statements.

Plaintiff additionally argues that Cosmopolitan's acts of confining her and ejecting her from the premises constituted defamatory statements.  (FAC (#16-1) at 20).  She alleges that by detaining Plaintiff as a prostitute, Cosmopolitan was communicating to others in the security office that she was in fact a prostitute through pantomime.  (*Id.*).  She further alleges that by ejecting her after being accused by the Officers of prostitution, Cosmopolitan was similarly labeling her as a prostitute.  (*Id.* at 21).

Defamatory statements in Nevada not only include words, but also actions that communicate defamation.  *K-Mart Corp. v. Washington*, 866 P.2d 274, 282 (Nev. 1993), *receded from on other grounds by Pope v. Motel 6*, 114 P.3d 277 (Nev. 2005).  In *K-Mart*, the plaintiff was handcuffed and marched through the store by K-Mart employees.  *Id.*  The Nevada Supreme Court concluded that the act of handcuffing the plaintiff and marching him

11

through the store imputed by pantomime that he had committed the crime of shoplifting. *Id.* at 283. The Court noted that "[w]ords or conduct or the combination of words and conduct can communicate defamation." *Id.* Additionally, the Court held that because the act imputed that the plaintiff had committed a crime, the action was "unquestionably slander per se", and therefore damages were presumed. *Id.* at 283-84.

Although in Nevada defamatory statements include actions which may communicate defamation, Plaintiff has failed to state a valid claim of defamation through pantomime in this case. First, Cosmopolitan cannot be liable for defamation for the act of detaining Plaintiff for prostitution at the request of the Officers because, as noted above, Cosmopolitan is entitled to the good-faith defense for detaining plaintiff as it was done in good faith at the request of government officials.

Second, Plaintiff has failed to state a claim of defamation for Cosmopolitan's decision to trespass Plaintiff because the publication element for defamation has not been satisfied as to this claim. In *K-Mart*, the plaintiff was handcuffed and marched through the store, which represented to others he had committed a crime. 866 P.2d at 282. Here, Plaintiff has only alleged she was trespassed. She was not handcuffed and was not paraded before others by Cosmopolitan employees. Cosmopolitan personnel simply issued her a warning not to trespass, took her photo, and instructed her to leave the premises. (FAC (#16-1) at 11). Plaintiff has not alleged that Cosmopolitan employees published to any third party any notice that she had been trespassed or that she was an undesirable. Because on the face of the FAC it appears that Cosmopolitan privately issued a warning not to trespass without anything more, Plaintiff has failed to allege that the publication requirement of defamation has been satisfied as to this claim, and the claim is consequently dismissed.

**IV.    Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress, the plaintiff must show "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dept. Stores, Inc. v. Beckwith*, 989

12

P.2d 882, 886 (Nev. 1999) (quoting *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981)). "[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citation omitted).

Plaintiff here has failed to allege she has suffered severe or extreme emotional distress resulting from the actions of Cosmopolitan. Plaintiff simply alleges that Cosmopolitan intended to inflict emotional distress on Plaintiff and that Plaintiff "has been injured" and suffered "emotional distress and mental suffering." (FAC (#16-1) at 14, 22). No facts are alleged that would establish the extent and severity of her suffering, and Plaintiff never claims that any distress she suffered was severe or extreme as is required to state a claim for intentional infliction of emotional distress. *See Dillard Dept. Stores, Inc.*, 989 P.2d at 886 (listing the elements of a claim for intentional infliction of emotional distress). Absent such allegations, the Court cannot draw the reasonable inference that Plaintiff suffered severe emotional distress or that Cosmopolitan was the actual and proximate cause of the distress. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Because Plaintiff has failed to plead that she suffered severe or extreme emotional distress resulting from Cosmopolitan's actions, this claim is dismissed. *See Azpilcueta v. Nevada ex rel. Transp. Authority*, 2010 WL 2681855, at *8 (D. Nev. 2010) (dismissing the plaintiff's claim of intentional infliction of emotional distress where no facts were pled demonstrating the extent and severity of the plaintiff's emotional distress); *Blankenship v. Cox*, 2007 WL 844891, at *12 (D. Nev. 2007) (dismissing the plaintiff's claim for intentional infliction of emotional distress where the complaint simply alleged the plaintiff suffered simple "emotional distress").

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Cosmopolitan's motion to dismiss (#11) is granted. As it appears allowing amendment would be futile based on the facts of this case, the claims against Cosmopolitan in the FAC are dismissed without leave to amend.

DATED: This 11th day of May, 2012.

13

United States District Judge